Good morning, counsel. We'll move now to case number four, Aniken Prosser v. Alex Azar. This is appeal number 20-3070. We're going to begin with counsel for the appellant, Mr. Pistorino. May it please the court, James Pistorino on behalf of Mrs. Prosser, and I'd like to observe five minutes for rebuttal. Very good. Just to help set the stage for the court, at a high level, Ms. Prosser litigated three times before ALJs the question of whether or not treatment for her brain cancer was medically reasonable, necessary, and a Medicare-covered benefit. All three ALJs determined that, in fact, it was, that including all the sub-issues about whether or not the treatment, that issue here was safe and effective and whether it was investigational or not. They all determined that it was, and the secretary did not appeal any of them. And as an anomaly, the case that brings us here today, we have a fourth ALJ, ALJ Grow, who decided the complete opposite, 100% inconsistent. ALJ Grow decided, in his view, that it wasn't medically reasonable and necessary to treat Ms. Prosser's brain cancer. So the same patient seeking the same treatment to address the same brain cancer has three results, one way and one another way. And all we're presenting here today is just our view that that's barred by just traditional principles of collateral estoppel. Mr. Pistorino, how much money is at issue with regard to one of these segments of the treatment? Yes, it is significant. So the treatment here costs in the range of $20,000 a month. So the claim before the court today here covers a four-month period. So it would be $80,000. And I do think it comes back to a very important issue, is just the sheer financial burden that Ms. Prosser would face were she to be charged with that personally. And the choices she would face about whether or not she could satisfy that burden or foregoing the life-saving coverage. So we do think that's actually a very, very important issue. Mr. Pistorino, can you focus on that aspect of it? What would have to come to pass for Ms. Prosser to get an invoice in the mail for $80,000? Yeah, so all that would have to happen is if the decision at issue in this case today is not reversed, the next time Ms. Prosser submits a claim, if it is denied under the Secretary's regulations, Ms. Prosser will be charged with the knowledge of the denial in this case. And again, under the Secretary's regulations, I know we cited the Medicare Claims Processing Manual. What that says is when both the supplier and the beneficiary have knowledge that the claim may be denied, then the beneficiary is liable. So just the next time Ms. Prosser submits a claim, if it's denied under the Secretary's own processing, she would be faced with the charge for $80,000. Let me make sure I understand that. So, I mean, God forbid she's denied. It seems like this treatment is actually beneficial and helpful and all of that. But hypothetically, if she's denied, say in March of 2021, wouldn't that determination entail some kind of judgment that the electrical Yeah, yes, it could. Okay, so if that's the case, so if somebody determined a physician and then Medicare agreed, you're saying that that would automatically generate an invoice for $80,000 to Ms. Prosser? I'm saying if the decision in this case is not reversed under 1395 PP, what I'm calling the Mulligan statute, Ms. Prosser would not qualify for reimbursement under that statute. And then again, under the Secretary's claims processing manual, because both Ms. Prosser and the supplier, in this case, Novacure, were charged with knowledge of the denial in this case, then again, as they say in the claims processing manual, the beneficiary is liable. Ms. Prosser would be liable, again, if it was a four-month period, for $80,000. Who's borne the cost of the $80,000 to date? Is that Novacure? To date, in this particular case on ALJ Gross claim, it has been Novacure so far, but again, on a going forward basis, because the result of if this case is not reversed, Ms. Prosser will be charged with knowledge. But hasn't the LCD changed? The LCD was revised in September 2019, but I think it's important to know is that the revision and the LCD does not apply to ALJ Gross, the claims that issue an ALJ Gross decision. So it just, while it was revised later, it's not applicable to any of the claims before the court here. So all the claims, the decisions of ALJ Woodyard, Figueroa, and Sardinus, and Gross, are based on the LCD as it was before, is the point we're making. So there could be possible, you know, you don't know whether or not she would qualify under the revised LCD, but the real issue is just, again, what we're seeking is just retroactive relief. ALJ Gross, we believe, would be bound by Claude Rolstaple, Secretary in this case, on the issue about whether or not it was medically reasonable and necessary for Ms. Prosser, the treatment here. And so if I may just briefly turn to the standing issue, because I know obviously that was the ultimate basis for the District Court's decision. And I know what we are saying is, I think we think it's an important point to focus on the entitlement to the treatment. What the statute, again, in this case, 42 U.S.C. 1395K, it creates, quote, an entitlement to have payment made to him or made on his behalf. That's section A1 and 2. So the statute creates the entitlement to the payment by Medicare. And so I know what we're saying here is that's the very thing that was denied by Judge Groh in this substantive statutory right. Again, here, the entitlement to have Medicare pay for the claims. So just coming back overall, again, as the, you know, from focusing on the issue of the denial of the right itself is the harm here. And so I know there was some discussion in the briefs about Spokane, but again, as Spokane itself says, that really focuses, at least as we understand it, on the distinction between substantive rights and procedural rights. And here, of course, this is a substantive right. It goes straight to the core of the very reason for the enactment of the Medicare Act, which was to, in the words of the Supreme Court, to ensure the elderly, in this case, the disabled, against the often crushing costs of Medicare. Mr. Reader, I don't know if these are the kind of cases you do or if this is what your practice is, but in the early years of oncologists using TTFT, was it common for it to be denied in some of those early periods like ALJ Groh did here? I think, well, with regard to the ALJs, my short answer would be no in the sense of cases where a beneficiary is represented. So it is the kind of thing that our firm does, and so I would say just overarching our experience has been something like, to now, something like 90% of the ALJs have found for coverage in the cases that we've been involved in. Oh, sure. On a present day, right, and in recent periods, but if you go back to this time period of the, you know, January to April of 2018, because I'm just trying to figure out what's going on here. Is Novacure the real party in interest here? Or what, you know, is Novacure out a bunch of what they see as kind of R&D recovery? Or what's that? Because I don't understand. It, maybe Ms. Constantine will agree with you that it's likely that Ms. Prosser is going to get an $80,000 invoice. We'll see in a few minutes. But it seems, that seems a bit attenuated to me, and so I'm trying to figure out what, what does Ms. Prosser really have at stake here? And I'm having a hard time identifying it, so that suggests to me that maybe Novacure has a lot at stake. Well, no, we respectfully say Ms. Prosser is the party in interest here. Under the statute, the right to recover, the right to entitlement under the Medicare Act is to Ms. Prosser herself, not the supplier. So there's a boatload of cases saying that suppliers don't have any right to get the recovery. It's Ms. Prosser that has the right. So what we say is that she's been harmed in two ways. One, just flat out, that denial of her right to a Medicare payment, number one. And number two, of course, we're talking about the Medicare mulligan. So I don't think it's disputed that if the decision in this case is not reversed, she, both she and Novacure, will be charged with knowledge of the denial in this case, and therefore she'll no longer qualify for, quote, unquote, the Medicare mulligan. So unless there's any further questions on at least the standing issue, I just wanted to briefly, if I may, talk about the collateral estoppel issues. And I know from at the district court level, the district court believed that the Congress had delegated to the Secretary the authority to decide whether or not the common law applies. And I know, as we say, the statute simply can't be read that way. It would be unconstitutional if it was read that way. And I don't think the Secretary tried to defend it here at all. And coming back again to the presumption of collateral estoppel, again, I know we've cited multiple cases just on the issue that there is a presumption. The presumption can only be overcome by showing a congressional intent to abrogate the common law. And in order to do so, the statute has to speak directly to the common law issue. And it can't be compatible with the pre-existing practice of the common law for the statute to overcome it. And there really has never been a statute identified in this case. The only statute that the Secretary contends is incompatible with common law is just de novo review. And again, this court reviews collateral estoppel itself and summary could never be the case. De novo review does not preclude the possibility of collateral estoppel overall. Mr. Pistorino, given our long history with Medicare as a nation, are you aware of any court that has held that an ALJ's coverage decision has collateral estoppel effect? Well, I know we cited multiple cases where, in fact, ALJs were given collateral estoppel effect. In the Social Security context. Yeah, Medicare Part B. Not in the Medicare Part B context, as it has been applied. But again, since there's the presumption is there. And I do want to make a point about the very narrow group of cases that you're addressing here. It has to be a case where the beneficiary was represented before. They won on the exact same issue. It became final. And they came back again on the exact same issue. So it can't be a sort of a one-time thing, an arm amputation or something like that. It has to be a case like this. We're going to have repeated claims for the identical thing. And so I'd like to reserve the remainder of my time. Thank you. Thank you. Ms. Constantine, we'll move to you. Good morning, Your Honors. And may it please the court. I think counsel for the appellant has made a number of assertions, both on the standing issue and on the substantive issues in this case, including the issues that were actually decided in the administrative law decision that are just plain wrong. This court ultimately need not and should not reach the merits of this case because it is very, very clear that Ms. Prosser does not have standing. So I'd like to address a couple aspects of that first. First, throughout the briefing, Ms. Prosser has repeatedly characterized the injury here as a lack of a right to substantive payment by Medicare. At most, what Ms. Prosser is claiming is that her claims were paid, but not from a source of her liking. If you look at even the statutory language that counsel is reading, it doesn't say that there's a right to payment by claims from a particular source. It's just a right to have claims paid. Money is fungible. So this case is not like other decisions of this court involving a statute that creates intangible rights, such as a privacy interest or something like that. It's a right to payment in this case. The very administrative law judge that is being challenged in this litigation recognized on its face that Ms. Prosser is not liable for the claims that were denied. So this court, in some of its questions, alluded to this idea that the possibility of financial liability is speculative, and that's exactly right. So just setting aside for one moment this argument about what Ms. Prosser characterizes as a mulligan, setting that aside for a moment, what would have to is Ms. Prosser would need to have another claim for benefits. The initial contractor would need to deny that claim. The qualified independent contractor would need to again deny it, and then it would have to go to the administrative law judge stage, and she would have to again get a denial. Now, even the materials that Ms. Prosser has in the record suggest that that's by no means certain. There was a March 18th, 2020 decision under the same local coverage determination that's been retired that found that the claims were covered. So in some ways, the standing issue overlaps a little with the merits issue in this case, and that one administrative law judge decision, it doesn't have any effect on future different claims, and that works to Ms. Prosser's benefit in some ways. Ms. Constantine, can you go back though to the this would have to happen and then that and then the following? So let's just suppose in March of 2021, a couple of months from now, that all of those things happened with respect to a current period claim. What I'm foggy about is, well, sure, that would reflect a denial of, you know, coverage in the here and now, but how would that result in an invoice being sent to Ms. Prosser for the period of January to April of 2018? That's what I can't connect very well. It wouldn't, and there's an important statutory provision here that Ms. Prosser is mistaken about in the brief, and that is ignoring, and that is, it is significant that this case involves claims for durable medical equipment. And as the secretary cited in her brief, there is a separate statute that provides additional protections when the issue is durable medical equipment. So in order for Ms. Prosser to receive an invoice from the supplier, she would have had to been provided with an advanced beneficiary notice. And in addition to that, because this is durable medical equipment, would have to have signed an agreement to pay. And there is no evidence in the record that that has still ever happened. Now, Ms. Prosser states in her reply brief, that those provisions only apply to telemarketing. That's simply mistaken. The provisions, if you look, there's a cross reference on the additional protections. Ms. Prosser also makes a representation that that applies to participating suppliers. She's simply mistaken about that. I'm happy if the court has questions about it to get into some of the reasons why that is, but there's no statutory basis for that assertion, and she's simply mistaken about it. So again, here, given these additional statutory protections, there's really no immediate danger that Ms. Prosser would receive an invoice for payment or anything like that. There's also a factual issue that Judge Brennan pointed out that I think is very significant here, and that is that by the time Ms. Prosser initiated this lawsuit in February 2020, the local coverage determination that had formed the basis for the denials of the, for Administrative Law Judge Groh's denials of the claims at issue here, had been retired. So it's very speculative and not at all clear that the new local coverage determination that allows for, broadens the coverage for this treatment, that she would be charged with notice of a likely denial under a new local coverage determination. And that's a very significant fact that Ms. Prosser basically ignores in her briefing. Ms. Castantine, you prefaced your remarks by asking us to put to the side the loss of the mulligan as it factors into the standing analysis. Could you address that? Whether or not the loss of the mulligan, which is the terminology used in the briefing, is a sufficient basis to find injury in fact? It is not. It is not here because, again, what is deemed a mulligan provision, and I regret that I don't have a better shorthand for that, but that's really not an appropriate way to characterize it. It's a statute that allows for potential indemnification of a beneficiary. And for any indemnification right to be triggered, there has to be a loss in the first instance. So, I mean, if you look at the chain of inferences that you need to have, Ms. Prosser is at most arguing that she's potentially lost this right to indemnification, but she isn't really sure that she's going to even have a loss yet. Again, there's been no advanced beneficiary notice and no agreement to pay on her part, and both of those things would need to happen before she could really complain that she wasn't getting indemnified. And are you layering into that the point that you made before Judge Brennan asked his question about the mulligan, that even if there's a denial in the future, that denial in the future is not pursuant to the 2008, whatever this, that acronym, LCD, yeah. Local coverage determination. I am trying my very best today to not use acronyms. Yeah, it's not. The denial was not, the denial in 2021 or whenever it would happen would not be pursuant to the LCD. Correct. In 2018. Correct. And, you know, in some ways, these standing issues really also are relevant to this court's resolution of the merits of this appeal. Counsel for the appellant started out by wanting to talk about things at the high level, very high level. I agree that's helpful. I don't agree that the appellant's characterization of this case as a high level is accurate. And I think that's very helpful to resolving both the standing and collateral estoppel issue. So at a very high level, at the time of all of the claims that are in question here, including Administrative Law Judge Groh's decision, there was a local coverage determination in effect that basically said tumor treatment field therapy is not a covered benefit under Medicare. It will be denied. The initial contractor is bound by that. Ms. Prosser was successful in appealing to an Administrative Law Judge and pursuant to regulation has the discretion to not apply a local coverage determination. But that same regulation that all of the Administrative Law Judges relied on in their decision says that a judge's decision to not apply a local coverage determination is limited to that particular claim. It doesn't have any effect. It doesn't affect the qualified independent contractor at earlier levels of review, and it doesn't apply to other claims. It's very clear on that. So essentially, this collateral estoppel argument is challenging the entire regulatory scheme. It's not, the appellant is not addressing kind of the threshold issue of the issues that Administrative Law Judges are authorized to decide in a claims appeal. They don't address the issue of whether tumor treatment field therapy is generally covered or whether it's reasonable and necessary as a general matter. And the Secretary has issued regulations with the force of law that say that a decision deciding to not apply a local coverage determination only applies to the particular claim under consideration. So to say that Administrative Law Judge concerning one set of claims has collateral estoppel for another different claim, it flies in the face of that regulation and would effectively repeal this has been upheld time and again. Another problem is that I think it's clear that the appellant recognizes is that in effect, if the court recognized collateral estoppel in the way that the appellant is claiming, that would functionally be deciding future claims for benefits. And there are many decisions. I encourage the court to look at the D.C. Circuit's Porzekanski decision, which has an excellent discussion on this issue. But I mean, this goes back to the Heckler v. Ringer decision, which is not a new decision that talks about the channeling requirement and basically said that you can't have a claim for injunctive or declaratory relief, establishing an entitlement to future benefits, regardless of whether Ms. Prosser is intends to claim an entitlement to future benefits, a decision saying that once an Administrative Law Judge decides to claim favorably that future Administrative Law Judges are bound by that decision, that's functionally what it's doing, whether she is or is not set up that way. Ms. Constantine, are these the kind of cases that you work on a regular basis? It's kind of coverage dispute issues. No, I mean, I have a work on a variety of civil. I'm not a specialized Medicare litigator, although I've endeavored to become one. I'm trying to figure out, given how long Medicare has been around, seems odd that an appeal in the Seventh Circuit in 2021 would be the first time there's a question about the collateral estoppel effect of a benefits determination. There's a clear reason for that, and that's because if you look at the regulations, so specifically 42 CFR 405-1062, it tells you what are, you know, especially in a case like this one involving a local coverage determination, it defines the issue that the Administrative Law is empowered to decide, which doesn't, you know, go generally to this issue of whether treatment is reasonable, necessary. And it also limits the effect of that decision to the particular claim under consideration. I just, as a final note, like to point out that in her briefing, Ms. Prosser generally complains about this claim by claim process and how time consuming and inconvenient it is. That was something that the Supreme Court, you know, recognized in Heckler-Ringer and again, in the Illinois Council decision and held that those kinds of considerations weren't enough to excuse someone from complying with the administrative exhaustion requirements. I mean, it's how the system is set up. And to the extent a beneficiary wants to challenge a local coverage determination, there is a separate procedure for doing that. In 42 CFR Part 426, there's a specific procedure that Ms. Prosser could have followed if she wanted a decision with broader application concerning a local coverage determination. So unless the court has any further questions, this court should affirm the judgment of the district court in all respects. Thank you. Thank you, Ms. Constantine. Mr. Pistorino, we'll go back to you for rebuttal. Thank you, Your Honor. I think maybe I'll just go in reverse a little bit. I heard a lot about the Secretary's regulations and how the Secretary doesn't feel that collateral should apply. But one thing that we know, of course, is that it doesn't matter what the Secretary's regulations say with regard to collateral estoppel. The Secretary has to point to a statute reflecting Congress's intent that collateral estoppel does not apply here. The Secretary has never identified that. So given that, the Secretary has not carried his burden to overcome the presumption. If there's a finding of collateral estoppel in this case as regard to Judge Groh's decision, it will not determine the claims in the future for all time. Each time Ms. Prosser will have to submit a claim, and that claim, whether collateral estoppel will apply in that claim, will have to be evaluated on it. Your Honor asked a question about what the effect might be of a future denial in respect of Ms. Prosser. Again, the underlying basis for any denial would be the conclusion that in this case, for example, the treatment is not medically reasonable and necessary. That factual determination, whether or not it's medically reasonable and necessary, that's exactly the factual determination that was made by ALJs Woodyard, Figueroa, and Sardinas. So again, it just goes to the basic issue of the factual issue was previously litigated. It is a final subject of the final decision. You don't get to just keep on relitigating time and time again until you get a different result. So I know one question was, could there possibly be a different result in the future? And yes, of course, under traditional collateral estoppel law, you could always have changed circumstances. I wish there were cases. Maybe Ms. Prosser would be cured. But unless there's a factual difference with regards to them, the collateral estoppel would apply. And I know, for example, again, coming back to the presumption of collateral estoppel, whether or not it can apply. I know this court, for example, examined the issue in a case that the secretary cites called Rucker v. Chalid, for example, looking at 405H and saying, again, 42SC405H, talking about finding conclusions and saying, of course, that was designed to prevent relitigation. So again, the secretary did not carry their burden to overcome the presumption of collateral estoppel. I want to go back, if I can, to the issue of standing and the damages here. Your Honor asked, how could Ms. Prosser ultimately become liable for it if there's a future denial or lose her mulligan? And I think respectfully, I think the secretary is just wrong. If you look at the Medicare Claims Processing Manual, what it says is that there are two ways that a beneficiary could be charged with knowledge and therefore lose their right to the Medicare mulligan. One would be if a provider, in this case, Novacure, presented the beneficiary with the advanced beneficiary notice, the ABN. An ABN is a statement by the provider to the beneficiary that the provider believes is probable the claim will not be covered. Probable. And ask the beneficiary to agree to be personally liable for the claim. So your Honor came back and asked about how could Ms. Prosser be liable? She could be liable, again, and face financial liability for $60,000 to $80,000 if she does exactly what the secretary contends. Be put to the choice of signing the document saying that she will be personally liable, that's one choice, or foregoing the life-saving coverage, life-saving medical care. And what we keep saying is that's exactly the injury that the Medicare Act was enacted to prevent happening. The secretary contends that the only way Ms. Prosser could be liable is if she signs an ABN. That's not true. Also, with regards to the knowledge, again, if you just look at the Medicare Claims Processing ways that a beneficiary can be charged with knowledge is, one, by signing an ABN, or two, having a prior denied claim. That's exactly the issue here. If this case is not reversed, she will be charged with knowledge of denial in this case and therefore lose the rights of the mulligan and any future denial she may be personally liable. I know, for example, this court, in terms of liability on a going-forward basis, this court, for example, in Main Street, identified it as simply, in terms of future liability, any non-liable, for standing, any non-negotiable, non-theoretical probability of harm. So since we've just identified one, any future denial, she will be liable for it personally. So we contend, again, she has standing. I see my time has expired unless anybody has any questions. Thank you, Mr. Pistorino. Thank you, Ms. Constantine. The case will be taken under revised.